Still good morning, Your Honors. I'd like to reserve two minutes. Your Honors, Karen Brake has been continuously insured for LTD benefits, long-term disability benefits, under ERISA with her employer Hutchinson since 1988. Up until 4-21-05, Continental Casualty was the insurer. Beginning on 4-1-2005, CNA Hartford wrote a new policy of group LTD coverage so that long-time employees would not lose ground under the new policy and have to start over satisfying pre-existing condition limitation time periods under the new policy, which normally would either limit or bar coverage, and that's an issue in this case. The employer provided that the policy would contain creditable coverage earned under the prior policy. The key provisions regarding the application of this creditable coverage are found in the appellant's appendix at pages 61, 65, 66, and 83. Now, creditable coverage applies to a new policy and is earned under a prior policy. On page 61, the prior policy is identified as the Continental Casualty policy. The effective date is April 1, 2005, and that effective date is a critical term of art in the policy. The creditable coverage will move the effective date of a new policy for pre-existing limitation purposes back in accordance with how much credit was earned under the old policy. The creditable coverage in this case that Ms. Brake was entitled to was not given to her. The creditable coverage provision is especially aimed at and specifically aimed at the pre-existing limitation time periods under this policy. Now, as to these pages that we're talking about, we have page 61, well, let's say 65 to start. The prior policy is the group insurance policy issued to the employer by Continental Casualty, which coverage was terminated as of the policy effective date. Then, again, on page 61, that's April 1, 2005. Then going over to the top of page 66 in the policy, you will see effect on pre-existing conditions. You will receive credit towards satisfaction of the pre-existing condition time periods under the policy for the time you were covered under the prior policy. If, after applying, the time covered under the prior policy, your disability is due to a pre-existing condition, then benefits shall be, and here there's a small formula that says that it would, if it's a pre-existing condition still, you will get the amount generally that was payable under the prior policy. In this case, when we apply that creditable coverage, it is no longer a pre-existing condition. It was a pre-existing condition, but is no longer one when the creditable coverage is given. And the reason for that is that the definition of creditable coverage is tied to the policy effective date. As of on page 83. Well, it seems to me that what we have here, if discretionary review standard applies, we have the plain language of the BIAP plan pre-existing condition saying that it's within 12 months prior to the effective date of the BIAP plan. Yes. And Hartford construed that as meaning when the BIAP plan coverage was chosen. Yes, and we're not contesting that. But that's within there, and therefore that was, what you're talking about, the creditable coverage thing doesn't apply. Oh. This applies, and why is that unreasonable? No, Your Honor, that would not be the case reading the policy as a whole. They have written the creditable coverage. You have to establish it's an unreasonable interpretation. Yes. And the data language couldn't be clearer. That's what I'm arguing here is an unreasonable interpretation. That's the first argument we're making. You cannot read the creditable coverage on pre-existing conditions out of this policy. That's what they did. The BIAP plan provisions you're talking about are the starting point for everybody who would either have or not have prior creditable coverage. And so we start with them, and if there's no creditable coverage that comes into play, they're right. They're completely right. She had a pre-existing condition, and her disability onset too soon, and it's very unfortunate. However, and we've conceded that, however, they haven't even looked at the creditable coverage. You see, that's the flaw. That's 2005. That's right. You see, what happens She was grandfathered in 2005 because they happened to change insurers. For whatever different coverages she might elect ever. That is correct. That is correct. And the reason, I know it's counterintuitive. I don't understand how, yeah, but it's more than counterintuitive. Hartford has to be unreasonable. In pursuing, in making a decision based, that's intuitive. Under Finley, one of the guidelines for an abuse of discretion is whether it negates a term of ERISA or the plan. Whether, and it's just like statutory construction. She got the creditable coverage benefits for the core plan she had in 2005, right? She did get those. That was not an issue, though. It didn't negate or nullify the provision you're relying on. Your Honor is suggesting the divide and conquer approach that is the flaw in the case below. Hamilton. Hartford doesn't seem to be unreasonable in taking that approach. But they are. Hamilton says that you do not take supplemental coverage and consider it to be a separate policy. And that's what they did. They divided and they conquered. They applied a set of standards to her that were already satisfied. For 20 years, she had been in this position and she had met all the requirements. As of 2005, according to their own policy language, she had satisfied the preexisting condition limitations already. Now, in support of that, we go to page 83. Preexisting condition means a condition for which medical treatment or advice was rendered, prescribed, or recommended within three months prior to your effective date of insurance. The only place where there is a designation of the effective date of insurance is in page 61, and that is April 1, 2005. This is the purpose of creditable coverage. This is the coverage that is supposed to carry over so that your long-time loyal employees don't have to requalify every time there is they don't have to start over with preexisting conditions. Now, it goes on to say, a condition shall no longer be considered preexisting for loss incurred or disability commencing after you have been insured under the policy for a period of 12 months. Under the policy. And Hamilton says this is the policy. They used the terms under the policy in all of this, not under the coverage. And so, if we take a look back again at page 66, I believe it is, you will receive credit towards satisfaction of the preexisting condition time periods under the policy for the time you were covered under the prior policy. And if, after applying that time, your disability is due to a preexisting condition, benefits can be reduced. But if it's not, they cannot be reduced. And that's the only logical reading of the provision. If I'm following your argument, because of her time with the company, even though the new coverage cost a little bit more, the employee had to pay a little bit more. Right. But she was eligible for that, whether she paid any more or not. So, when she decided to take disability, she was automatically covered at the higher rate, even though she had paid no premiums for that. Did she have to pony up the premiums for a period of time? She was technically not, Your Honor, eligible for it without satisfying the preexisting condition limitations, unless we apply the creditable coverage. But you said this creditable coverage satisfied that. Yes. She was marching along with this additional coverage in her pocket, and all she had to do was say, I want to take disability now. And did she have to pay any premiums after she takes disability? Yes. She continued to pay up until she actually went on disability. After she goes on disability, she pays nothing. Then there's a waiver of premium that she has also purchased in her premium. Okay. Right. Okay. Now, going on just very briefly, the discretionary clause. The final ruling by the Appeals Council affirming the discretion was October 10, October 20, 2008. The anti-discretionary clause in South Dakota was enacted, the regulation was enacted June 30, and in some instances was made effective September 8. That anti-discretion clause in subsection 2 of it applies to policies which are issued or delivered in South Dakota. It's not preempted by federal law. Correct, under Ross, the case I cited. This is not preempted. The Ross case clearly affirms anti-discretion regulations and their effectiveness. The part 3 of that regulation says nobody can enforce in South Dakota an act of a third-party administrator, claims administrator, which is enforcing a discretion. And so public policy in South Dakota is very solid. And this is a South Dakota resident. She worked at the South Dakota plant. This is being enforced in South Dakota. While Minnesota law may apply in the first instance, South Dakota reserves the right to regulate the behavior of its insurance companies. And remember, this — It wasn't in effect when the operative events occurred in this case. Depends on what you mean by the operative events. When it wasn't — The renewal that took place after she was on disability leave is not an operative event. It certainly did take place after — the renewals were April 1. And they took place April 1 and the anniversaries of every date after that. And it continues to renew. But that shouldn't stop the renewal from taking place of the coverage. See, it renews annually. Your Honor, it does. Well, you can say it does, but I mean, that's just — talk about counterintuitive. I mean, that's just worse than that. Let me see if I can find it real quickly, what we're talking about here. You're saying that because the policy was — she says it must have been renewed after I was on disability leave. Therefore, it was renewed at some point after June 30, 2008. That's the argument, isn't it? It says it renews annually. It renews with the payment of premium. April 1, 2009 renewal made her claim — 2008 renewal, 2009 renewal? Yeah, 2009 would have been it. You're relying on a renewal that occurred long after she was no longer an employee and was on long-term disability. And regardless of that — It's your authority from anywhere to support that operative, effective date type. This says that it renews — the policy renews. Your authority for retroactive — I'm not claiming retroactive renewal. What I'm claiming is the operative events continue. The decision — the exercise of the discretion and the decision, Your Honor, were operative on October 20, 2008. The regulation was in effect. That's the date. But the policy in effect then was the one from April of 08. Yeah, of 05. Yeah, but the statute — I mean, the rule doesn't apply to that policy. Issued or renewed is what it says. But it hadn't been renewed after June 30 of 08. Well, that's subsection 2. At the time of her disability. That's subsection 2. Subsection 3 says that it does not refer to issued or renewed. It is that nobody can enforce as a claims administrator in this state a discretionary clause. And they enforced it. So regardless of whether we agree that the regulation applied to the policy itself in not containing one, we do have to acknowledge that subsection 3 is in fact — Oh, all right. Thank you. Thank you. May it please the Court. Counsel, I think I just need to respond to a couple things quickly that are contained in Appellant's reply brief, if I may. With respect to this credit for prior coverage argument, I think Ms. Brake points out a couple of things in her reply brief that are significant and sort of highlight the disconnect here on her argument. First, she talks about the purpose of this, what she calls the credit for prior coverage provision. It's first to not have employees qualify over and over again for the same coverage they had before. She says, again, at page 10 of her brief, that first one was from page 7, but at page 10 of her reply brief that this provision exists to save employees the time of having to re-qualify. Re-qualify for what? Coverage they had before. Again, today we hear Ms. Brake argue that that provision exists so that employees don't lose ground. Lose ground compared to what? The coverage they had before. Ms. Brake didn't have buy-up coverage before, so there wasn't anything to credit with respect to this term. Furthermore, even if there was some merit to this argument, I think it's really important to just reiterate a point we make in our brief, that it would render another plan term meaningless, which is something that Finley doesn't permit, regardless of whether the standard of review is abusive discretion or de novo. Of course, we're arguing here it should be for abusive discretion, but we also point out that we don't think it matters. That term says, and this is at page 7 of our appendix, if you choose to be insured under the buy-up plan during an annual enrollment period, precisely what Ms. Brake did here, will be subject to the buy-up plan pre-existing condition exclusion below. That term would be rendered completely meaningless by the construction that Ms. Brake would give it here. And then lastly, I would just point out that if you look at the Hamilton case, I don't know how else to say this, the Hamilton case doesn't have anything to do with the divisibility or indivisibility of an insurance policy. It has to do with determining applicable state law under construction of a state statute. Next point. In appellant's reply brief, they make what I think is a significant concession. They say that with respect to the Bonesiewicz case, and this is the case out of the Second Circuit, or well, it's out of the Court of Appeals of New York on referral from the Second Circuit, interpreting a New York statute, that Ms. Brake says is how you should interpret the South Dakota statute. She says if you accept the conclusion in Bonesiewicz that the South Dakota statute is like the Colorado statute, you shouldn't stop there. You should go on and then look at the South Dakota statute and interpret it. Well, that's precisely what Bonesiewicz does. Bonesiewicz is a statutory interpretation case. If you accept the argument that the Colorado statute in Bonesiewicz, which the court agreed takes exactly the sort of operative effect that we contend the South Dakota statute has here, if you accept that that's correct, this is over. This is over, both relative to the contract and relative to any argument that plaintiff might make under South Dakota law. As we point out in our brief, you shouldn't apply South Dakota law. You should apply the terms of the policy, but the policy isn't functionally different from South Dakota law. Finally, just to close on a different point, we make the argument in our brief that the plan and the plan sponsor, well, that the plan sponsor and the insurer here agreed that to the extent ERISA does not apply to govern this claim, Minnesota law should. We cite cases in our brief, admittedly from outside the Eighth Circuit, but we cite a number of cases in our brief that make the point that those terms, those choice of law terms are enforceable. Generally speaking, unless you have either viewed from a negative perspective in the words of some of those cases, fundamental unfairness, or viewed from the other, the positive perspective, they are enforceable, so long as there is a rational connection between the forum and the parties. Here, I'll take a second step first. There is a rational connection between the parties and the forum. Hutchinson Technology is a Minnesota-based employer. Its headquarters are, I believe, in Plymouth, Minnesota. The policy says exactly what city. It makes eminent sense, then, that Hutchinson Technology would, for a variety of reasons, decide that it would prefer to have one state's laws, to the extent ERISA doesn't apply, govern the terms and benefits under this plan. So this passes that part of this test. Second, there isn't anything unreasonable or unfair, fundamentally unreasonable or unfair, about this. Ms. Brake says there is because, as best I understand it, this violates South Dakota policy. But the authority that's cited for that are a series of South Dakota statutes regulating insurance. Every state's got regulations and statutes governing insurance. If that alone were enough to create a public policy, then these choice of law clauses could never be enforced. That's not enough. If policy can be enough to establish the unreasonable or unfairness of a term like that, you've got to go further. I can't tell you how much further because I can't find a case that reaches that holding, but you've got to go at least further than that because there is no limiting principle that would apply in that circumstance. Unless the panel has any questions, that's all I've got. I've got a question about the interpretation of the paragraph in the plan about preexisting conditions. The second sentence, which says, A condition shall no longer be considered preexisting for loss incurred or disability commencing after the buyout plan has been enforced for a period of 12 months. What do you think that means when it says, No longer be considered preexisting for loss incurred after the plan has been enforced for 12 months? I believe it is synonymous with disability commencing. I believe that that term is intending the two things to mean essentially the same thing because the only thing that sort of triggers a loss under the… Surplusage, you're saying. That loss incurred language is surplusage. We wouldn't normally interpret a plan… I suppose the other argument is that loss incurred means a loss incurred from a disability that existed before after 12 months have expired. No, I don't think that's correct. I think it means to say essentially the same thing, and I wouldn't say that it's surplusage. If you look around, for example, in the Beneswits case, that loss incurred or disability commencing phrase shows up in a number of state statutes or in varying forms. And I think it's a reasonable attempt by an insurance company to describe circumstances in a way that plan participants can reasonably understand. I don't think it's intended to be loss incurred as an ongoing thing. Do you think it means… Loss incurred means the same thing as a new disability commencing that causes a loss? I believe it means the date of disability. Loss incurred means date of disability. Correct. And a disability by definition under the plan, I think, in at least most circumstances, commences on the date of disability. So you think loss incurred means disability. It's not a defined term. Correct. Okay, well, that was my question. Thank you. Thank you. Thank you, counsel. The case has been thoroughly briefed and argued, and we'll take it up here finally.